**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

|  |  |  |
|---|---|---|
| | : | |
| In re | : | Chapter 11 |
| | : | |
| Robert Andrews | : | Case No. 94-50558 |
| | : | |
| Vincent S. Andrews | : | Case No. 94-50559 |
| | : | |
| Vincent Andrews Management Corp | : | Case No. 94-50557 |
| | : | |
| Debtors. | : | |

_____

|  |  |  |
|---|---|---|
| Christopher  McCarron | : | Adv. Pro. No. 94-5176 |
| | : | |
| Plaintiff | : | |
| v. | : | |
| | : | |
| Vincent S. Andrews, Jr. | : | |
| | : | |
| Defendant | : | |

_____

|  |  |  |
|---|---|---|
| Christopher McCarron | : | Adv. Pro. No. 94-5179 |
| | : | |
| Plaintiff | : | |
| v. | : | |
| | : | |
| Robert L. Andrews, | : | |
| | : | |
| Defendant | : | |

_____

|  |  |  |
|---|---|---|
| Laffit Pincay, Jr. | : | Adv. Pro. No. 94-5180 |
| | : | |
| Plaintiff | : | |
| v. | : | |
| | : | |
| Vincent S. Andrews, Jr. | : | |
| | : | |
| Defendant | : | |

_____

|  |  |  |
|---|---|---|
| Laffit Pincay, Jr. | : | Adv. Pro.  No. 94-5181 |
| | : | |
| Plaintiff | : | |
| v. | : | |

|   | : |
|---|---|
| Robert L. Andrews | : |
|   | : |
| Defendant | : |
|   | : |

_____

APPEARANCES:

Irve Goldman                                    Attorney for Plaintiffs
Pullman & Comley, LLC
850 Main Street
P.O. Box 7006
Bridgeport, CT 06601

James C. Graham                                 Attorney for Defendants
Pepe & Hazard
Goodwin Square
225 Asylum Street
Hartford, CT 06103

Gregory W. Nye                                  Attorney for Defendants
Bracewell & Giuliani LLP
Goodwin Square
225 Asylum Street, Suite 2600
Hartford, CT 06103

_____

## MEMORANDUM AND ORDER ON PLAINTIFFS' MOTION AND DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT[1]

Alan H.W. Shiff, United States Bankruptcy Judge

        The cross motion for summary judgment in these nondischargeability adversary proceedings is the latest battle in a nineteen year war of attrition which has been waged

_____

        [1]The plaintiffs and the defendants have filed motions and cross motions for summary judgment in each of these adversary proceedings.  The content of those motions is the same.  Therefore, the court will refer to the instant motions collectively as the plaintiffs' motion for summary judgment and the defendants' cross motion for summary judgment.

by the defendants in this court, the United States District Court for the Central District of
California, and the Ninth Circuit Court of Appeals.  The denial of a petition for certiorari filed
by the defendants put a fire wall between them and the United States Supreme Court.

## BACKGROUND

On March 10, 1989 and August 18, 1989, the plaintiffs, who are professional
horseracing jockeys, brought separate actions in the United States District Court for the
Central District of California against the defendants, their former business managers. [2]
Those actions, which alleged, *inter alia*, fraud under California law and violations of the
Racketeering Influence and Corrupt Organization Act ("RICO"), *see* 18 U.S.C. § 1962(c),
were consolidated for a jury trial ("California Action").  The trial was bifurcated into liability
and damage phases.  On July 30, 1992, the jury returned verdicts on the liability issue in
favor of the plaintiffs.  On September 30, 1992, the jury returned verdicts for compensatory
damages on their state law and federal RICO claims as follows: Laffit Pincay $670,685 and
Christopher McCarron $313,841.  Pincay and McCarron were also awarded punitive
damages for the state law violations of approximately $2.1 million and $1.18 million,
respectively.

At the district court's direction, the plaintiffs elected damages under their federal
RICO claims, and on October 28, 1993, the district court entered judgments on those
claims. The defendants then filed a motion for judgment notwithstanding the verdicts.  That
motion was stayed by the February 28, 1994 commencement of these bankruptcy cases.

On June 20, 1994, the plaintiffs commenced these adversary proceedings, seeking
a determination that the judgment debts are nondischargeable under 11 U.S.C. § 523(a)
and (c).  On July 29, 1994, the defendants filed answers.  It is noteworthy that their
answers did not include an affirmative defense, i.e., that the adversary proceedings were
time barred by Rule 4007(c), Fed R. Bankr. P.  On July 20, 1995, the defendants filed an

---

[2] The defendants Vincent and Robert Andrews along with their company, Vincent
Andrews Management Corporation ("VAMC"), managed the plaintiffs' financial,
accounting, and tax matters.  Pincay and McCarron kept this arrangement from 1969 to
1987and 1979 to 1988 respectively.

amended motion requesting the court to abstain from hearing these adversary proceedings and for a modification of the automatic stay, so they could resume the California Action. *See* 28 U.S.C. § 1334(c)(1);11 U.S.C. § 362(d).  On October 26, 1995, the court, over the plaintiffs' objection [3] granted that motion, and stayed these proceedings until such time as a final nonappealable judgment entered in the California Action.

On June 28, 1996, the defendants' motion in the California Action for judgment notwithstanding the verdicts was denied as to Robert and Vincent but granted as to VAMC. On August 13, 1997, the district court reconsidered and reversed its decision as to VAMC. On December 22, 1997, the district court again directed the plaintiffs to elect damages either under their RICO or state law claims, and they again elected damages under RICO. Accordingly, on January 9, 1998, the district court entered judgments on the verdicts against the defendants for fraud under RICO.

On February 6, 2001, the Ninth Circuit vacated those judgments because the RICO claims were time barred.  *Pincay v. Andrews* ("*Pincay I*"), 238 F.3d 1106, 1110 (9th Cir. 2001), *cert. denied*, 534 U.S. 885 (2001). That decision did not disturb the jury verdicts as to the plaintiffs' state law claims.  *Id*.  On July 3, 2002, the district court entered judgments in favor of the plaintiffs for, *inter alia*, California common law claims of fraud, i.e., intentional misrepresentation and intentional concealment.  The district court judgments incorporated the jury's answers to interrogatories.  Pincay Judgement and McCarron Judgment dated July 3, 2002. [4]

The defendants missed the bar date for filing an appeal.  On August 27, 2002, they filed a motion for extension of time to file a notice of appeal which was granted on September 3, 2002.  On March 16, 2005, the Ninth Circuit affirmed the July 3, 2002

---

[3]  The plaintiffs' objection was that abstention and/or stay relief would not promote judicial economy and would only serve to delay these proceedings.  Docket Entry # 28 in Case No. 94-50558 at ¶ ¶ 3 and 7.

[4]  Defendants' Opposition to Plaintiffs' Motion for Summary Judgment, Declaration of defendants' attorney James Graham, dated May 1, 2007, Exh. 32.

4

judgments. *Pincay v. Andrews,* ("*Pincay II*"), 2005 WL 3782443 (9th Cir. 2005). The appellate process concluded on December 5, 2005 when the United States Supreme Court denied the defendants' petition for *certiorari. Andrews v. Pincay*, 546 U.S. 1061 (2005). The combined amounts of those judgments are the "subject debts" in these adversary proceedings.

On January 13, 2006, these adversary proceedings were reactivated. At a November 28, 2006 hearing, the court granted the parties permission to amend their pleadings by an order that specifically deferred the issue of whether the defendants waived any statute of limitations defense, because although such an affirmative defense was anticipated, it had not yet been filed. Tr. dated November 28, 2006 at 18 -19. [5] On December 6, 2006, the plaintiffs filed first amended complaints, which clarified that the subject debts arose from claims based on California law. [6] See *supra* at 4. On December 18, 2006, the defendants filed answers which for the first time included an affirmative defense that the original complaints were not timely filed. *See* Rule 4007(c), Fed. R. Bankr. P ("Rule 4007"). [7]

As part of a January 31, 2007 consensual scheduling order, the plaintiffs elected to prosecute these adversary proceedings exclusively by means of their motions for summary judgment. Pursuant to that order, the plaintiffs agreed that if these motions were denied, their only recourse would be to appeal or move under Rules 59 or 60, Fed. R. Civ. P., if applicable. Consent Order dated January 31, 2007 at ¶ 4.

On March 21, 2007, the plaintiffs filed the instant motion for summary judgment which seeks a determination that the subject debts are entitled to preclusive effect

---

[5] Plaintiffs' Memorandum in Response to Defendants' Reply to Plaintiffs' Opposition to Defendants' Cross-Motion for Summary Judgment, Affidavit of plaintiffs' attorney Irve J. Goldman dated August 17, 2007, Exh. A.

[6] There are four First Amended Complaints in total. With the exception of minor formatting differences, the text of all four complaints is identical. Therefore, the court will refer to the claims raised in those complaints as the plaintiffs' claim for fraud.

[7] For the reasons discussed in note 6, the court will refer to the defenses raised in the defendants' amended answers in the singular tense.

under the doctrine of collateral estoppel.  On that date, the defendants filed their cross motion for summary judgment which seeks the dismissal of these adversary proceedings as time barred under Rule 4007.

## DISCUSSION

A summary judgment will enter "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Globecon Group L.L.C. v. Hartford Fire Ins. Co.*, 434 F.3d 165, 170 (2d Cir. 2006); Rule 56(c), Fed. R. Civ. P.; Rule 7056, Fed. R. Bankr. P.  The party moving for summary judgment bears the burden of proving that no genuine issues of material fact exist and that the undisputed facts establish that party's right to judgment as a matter of law.  *Rodriguez v. City of New York*, 72 F.3d 1051, 1060-61 (2d Cir.1995).  That burden may be satisfied "by showing that little or no evidence may be found in support of the nonmoving party's case."  *In re Roberti*, ("*Roberti I*"), 183 B.R. 991, 999 (Bankr. D.Conn. 1995)(citation omitted).

While the court "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant[,]" *Baisch v. Gallina*, 346 F.3d 366, 372 (2d Cir. 2003)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)), "[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of material fact." *Gallien v. Connecticut Gen. Life Ins. Co.*, 49 F.3d 878, 881-82 (2d Cir. 1995)(citation omitted).  As this court has noted, "there is no genuine issue of material fact when no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight." *Roberti I*, *supra*, 183 B.R. at 999.

## Defendants' Cross Motion for Summary Judgment

The court will first address the defendants' cross motion for summary judgment as its resolution, if granted, would dispose of the need to consider the issues raised in the plaintiffs' motion.  Rule 4007, upon which the motion is premised, provides that a complaint brought under 11 U.S.C. § 523 must be filed within 60 days of the first date set for the meeting of creditors or for such additional time as the court, for cause, orders.  The complaints were not timely filed. [8]  If that fact stood alone, the imposition of summary judgment would be warranted.  But it does not.

The time period imposed by Rule 4007 is not jurisdictional.  Rather, the rule is comparable to a statute of limitations and therefore subject to the equitable defenses of judicial estoppel and waiver.  *European American Bank v. Benedict (In re Benedict)*, 90 F.3d 50, 54 (2d Cir. 1996).  The plaintiffs' objection to the defendants' motion claims that additional material facts, premised on equitable doctrines, block the consequences of Rule 4007's time bar. The issue here is not whether the asserted issues of material fact will ultimately be proven at trial, but rather whether there are such issues, which if read in the light most favorable to the plaintiffs, will defeat the defendants' motion for summary judgment.

### Judicial Estoppel

The doctrine of judicial estoppel provides that "where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him."  *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001).  As explained by the Supreme Court, judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in

---

[8] The applicable filing deadline was May 27, 1994.  The plaintiffs commenced these adversary proceedings on June 20, 1994.

another phase." *Pegram v. Hendrich*, 530 U.S. 211, 227, n. 8 (2000); *New Hampshire v. Maine*, *supra*, 532 U.S. at 749. The purpose of the doctrine is to "protect judicial integrity by preventing litigants from playing fast and loose with courts, and thereby avoiding unfair results and unseemliness." *In re Peck*, 155 B.R. 301, 305 (Bankr. D.Conn. 1993)(citations omitted).

The Second Circuit has consistently limited the application of judicial estoppel to "situations where a party both takes a position that is inconsistent with one taken in a prior proceeding, and has had that earlier position adopted by the tribunal to which it is advanced." *Uzdavines v. Weeks Marine, Inc.*, 418 F.3d 138, 148 (2d Cir. 2005). Application of this doctrine is limited to situations "where the risk of inconsistent results with its impact on judicial integrity is certain[,]" *Id.* at 148, and is inapplicable where the first statement was the result of a good faith mistake or an unintentional error. *Simon v. Safelite Glass Corp.*, 128 F.3d 68, 73 (2d Cir. 1997).

The defendants attempt to restrict the application of judicial estoppel to those situations where an inconsistent statement is made in a "*separate proceeding*," i.e., in a different action. (emphasis added). That view of the law conflicts with the Supreme Court's decision in *New Hampshire* v. *Maine*, *supra*, 532 U.S. at 749 (holding that judicial estoppel "generally prevents a party from prevailing *in one phase of a case* on an argument and then relying on a contradictory argument *to prevail in another phase*.")(emphasis added). It further clashes with the Second Circuit holding in *Stichting v. Schreiber*, ("*Stichting II*"), 407 F.3d 34 (2d Cir. 2005). In *Stichting II*, the court recognized that judicial estoppel may apply to inconsistent statements in the same action. *Stichting II*, 407 F.3d at 45 (judicial estoppel could apply to inconsistent statements made in the same action, but the doctrine was not applicable in that case because the district court did not rely on the statements). *See also*, *In re Peck*, *supra*, 155 B.R. at 305, (Chapter 11 debtor judicially estopped from taking a position that was inconsistent with an earlier position taken in a stipulated order entered in his bankruptcy case).

The plaintiffs contend that the defendants were aware of a dispositive affirmative defense under Rule 4007 when the complaints in these adversary proceedings were filed

but chose to remain silent as part of a bi-coastal litigation strategy. [9]  For example, in the California Action, after the bar date for appeal of the July 3, 2003 judgments had passed, the defendants argued that they should get an extension of time to appeal because a decision by the Ninth Circuit would provide guidance to the bankruptcy court.

> It is not necessary to reach the issue as to the precise role or weight of such Ninth Circuit guidance in the bankruptcy proceeding, because **there is essentially no doubt** that no matter what precise and appropriate measure of misconduct applies in the context of dischargeability assessments, **such guidance would directly and importantly inform and increase the efficiency of the bankruptcy court analysis** (one central purpose contemplated by the original stay).  **There is likewise essentially no doubt that the absence of such guidance would generate significant incremental needs for bankruptcy court litigation** that would far outweigh the four week impact at issue here."

> Defendants' Memorandum of Points and Authorities in Support of Motion for Extension to File Appeal at 16 (emphasis added). [10]

They further argued that if their appeal was not allowed, these adversary proceedings would become more complex and possibly require a full trial.

> . . . . if access to appellate guidance is foreclosed, that will not only increase the likelihood of an unfair and inaccurate result - a harsh sanction for the movants, who have so much at stake in this matter - **but will unavoidably complicate and extend the length of related Connecticut bankruptcy proceedings.**

> *Id.* at 3 (emphasis added).

> The present status of the bankruptcy case is awaiting further direction from

---

[9]The plaintiffs also maintain that the doctrines of equitable estoppel and laches should apply to preclude the defendants' Rule 4007(c) defense.  For the reasons discussed *infra* at 11-14 the court need not address those issues and will limit its discussion to the doctrines of judicial estoppel and waiver.

[10]Plaintiffs' Memorandum in Opposition to Defendants' Cross-Motion for Summary Judgment, Affidavit of plaintiffs' attorney Patrick McAdam dated April 30, 2007, Exh. A.  Patrick McAdam served as the plaintiffs' attorney in the California Action.

the Ninth Circuit on a host of issues.  Specifically, the Bankruptcy Court awaits direction on the Defendants' intent in order to apply such determination to the nondischargeability issue that is now stayed before the Bankruptcy Court.  ***Should the Ninth Circuit not proceed, the issues before the Bankruptcy Court would become much more complex***, as the Bankruptcy Court would be faced with weighing the Ninth Circuit's prior determination with respect to intent and its interaction with the District Court finding on the state law claims.  Both the Ninth Circuit's prior decision and the state law claims determination of the District Court Judge would have to be layered upon Bankruptcy Law issues of nondischargeability.  Since the issue of nondischargeability often hinges upon actual intent, ***hearings, if not a full blown trial, might well ensue in the bankruptcy proceedings***, which will result in new and further delays and imposition on the Bankruptcy Court's resources rather than a clear resolution on the issue of intent.

Declaration of James G. Verrillo in Support of Ex Parte Motion For Extension of Time to File Notice of Appeal at ¶ 6 (emphasis added).[11]

Essentially the same argument was made by the defendants in this court by their amended motion to abstain and for relief from the automatic stay so they could continue their efforts in the California Action, see *supra* at 3-4.  The defendants stated:

Upon information and belief, the underlying issues in the Consolidated Actions [12] ***primarily relate to claims which are the very same issues that must be otherwise litigated before this Court in the Adversary Proceedings***.

In view of the pending Consolidated Actions, out of respect for state law[,] the interest of justice, judicial economy, to avoid inconsistent verdicts and duplicative litigation, to conserve scarce resources of the Bankruptcy Court, and ***to give the parties an effective opportunity to fully resolve the Consolidated Actions and to fix the claims against the Debtor to the extent there will ultimately be a claim***, it is respectfully submitted that these matters should be adjudicated by the District Court in California

Amended Motion for Abstention or in the Alternative to Permit Adversary Proceedings to Remain Open on the Bankruptcy Court Docket and for Relief

---

[11]Plaintiffs' Memorandum in Opposition to Defendants' Cross-Motion for Summary Judgment, Affidavit of plaintiffs' attorney Patrick McAdam dated April 30, 2007, Exh. B.

[12]The term Consolidated Actions refers to the California Action.  See *supra* at 3.

from Stay (emphasis added) at 4. [13]

> We sat down, Your Honor, in February [1995] with the Court [14] and indicated that since ***the non-dischargeability issues were the same issues that were being decided in California***, it was the [defendant's] position - all three [defendants] - that the matter ought to go back to California. And we said we'd stipulate to that.

Tr. dated October 24, 1995 at 2-3. [15]

The defendants therefore stated in this court and in the California Action that it was necessary to defer the prosecution of these adversary proceedings until the California Action concluded because resolution of that litigation would have an effect on a trial *on the merits* of these proceedings. However, if at the time the defendants made those statements, they told this court about their current position, i.e., that these adversary proceedings could not be prosecuted because they were barred by Rule 4007, the defendants' motion for a stay would not have been granted. The district court in California was similarly misled in that it was asked to continue the appellate process without being told that the complaints filed here were not timely filed under Rule 4007. Indeed, the fact that the defendants argued that proceeding with the appellate process would be of assistance to this court, can only be viewed as an assertion that these adversary proceedings are viable. It is likely that if the California district court and the Ninth Circuit had been the told that a Rule 4007 defense was an option, they would not have expended so much time and effort until that rule had been tested. See Appendix.

Therefore, by employing that bi-coastal strategy, the defendants have made

---

[13] Plaintiffs' Memorandum in Opposition to Defendants' Cross-Motion for Summary Judgment, Affidavit of plaintiffs' attorney Irve J. Goldman dated May 2, 2007, Exh. I.

[14] The defendants are referring to a February 8, 1995 scheduling status conference conducted in chambers. Docket Entry for February 8, 1995 in Adv. Pro. No. 94-5176.

[15] Plaintiffs' Memorandum in Opposition to Defendants' Cross-Motion for Summary Judgment, Affidavit of plaintiffs' attorney Irve J. Goldman dated May 2, 2007, Exh. J.

11

statements in the California Action and here that are irreconcilable with their instant motions.  If those conflicting statements are not admissions that there are material facts which would defeat the defendants' affirmative defense, at the very least they support an inference that there are material facts in dispute which sustain the plaintiffs' objection to the defendants' cross motion for summary judgment.

The defendants further argue that judicial estoppel should not be considered because any inconsistent statements were not intentional. The record does not support that claim.  When the court "construe[s] the facts in the light most favorable to the [plaintiffs] and . . . . resolve[s] all ambiguities and draw[s] all reasonable inferences against the [defendants]" as required by *Baisch v. Gallina*, *supra*, 346 F. 3d at 372, the conclusion is warranted that defendants' inconsistent statements are not the result of good faith mistakes or unintentional errors.  For example, at the November 28, 2006 hearing on the parties' motions to amend their original pleadings, the court inquired as to why the defendants did not assert a Rule 4007 defense in 1994.  The defendants responded:

> Your Honor, [Bankruptcy] Rule 4004 and Rule 4007, which operate similarly, were viewed in many places as matters of subject matter jurisdiction.  That wasn't resolved – that can be raised at any point in time.  If it wasn't raised, it could have been raised at any point in time.
> Tr. dated November 28, 2006 at 11-12. [16]

That explanation suggests that the defendants knew in 1994 that these adversary proceedings were time barred by Rule 4007, but chose not to raise that affirmative defense because at that time the rule was considered by some courts to govern subject matter jurisdiction.  However, despite the fact that the Second Circuit ruled in 1996 that Rule 4007 was not jurisdictional, *Benedict*, *supra*, 90 F.3d at 54, the defendants delayed asserting that defense for ten years, that is until December 18, 2006.  It is therefore reasonable to infer that their delay was not the result of a good faith mistake or unintentional error, but rather it served a bi-coastal litigation strategy, see *supra* at 8-9.

---

[16]Plaintiffs' Memorandum in Response to Defendants' Reply to Plaintiffs' Opposition to Defendants' Cross-Motion for Summary Judgment, Affidavit of plaintiffs' attorney Irve J. Goldman dated August 17, 2007, Exh. A.

12

**Waiver**

The plaintiffs argue that the defendants waived their right to assert a Rule 4007 affirmative defense.  Waiver is generally defined "as an intentional relinquishment of a known right." *Benedict*, supra, 90 F.3d at 55.  It requires the existence of a right, privilege, advantage or benefit that may be waived, actual or constructive knowledge thereof, and an intention to relinquish.  *In re Gonzalez*, 241 B.R. 67, 75 (S.D.N.Y. 1999).  Waiver may be express or implied from the conduct of a party.  *Id*.

The defendants ask the court to view their delay through the scope of Rule 7015, Fed. R. Bankr. P. ("Rule 7015"). [17]  They correctly note that the rule has been liberally construed in this circuit so that motions to amend pleadings should be granted "in the absence of a showing by the non-movant of prejudice or bad faith."  *Block v. First Blood Associates*, 988 F.2d 344, 350 (2d Cir. 1993).  The thrust of their argument is that since Rule 7015 should be liberally read, it should by analogy justify their ten year delay in raising their affirmative defense.[18]

That argument is not only unwarranted on its face, it offends the law of this case. As noted *supra* at 5, the court granted both parties' requests to file amended pleadings at the November 28, 2006 hearing.  Tr. dated November 28, 2006 at 6 and 18-19. [19]  But at that hearing, the court specifically declined to address the applicability of waiver to a Rule 4007 affirmative defense for the reason that the court would address any such issue if and

---

[17]Pursuant to Rule 7015, Rule 15, Fed. R. Civ. P., which governs amended and supplemental pleadings, applies to adversary proceedings.

[18]The court notes that the defendants cite *Kontrick v. Ryan*, 540 U.S. 443 (2004)  to support their position.  *Kontrick* is inapposite as the Court expressly stated that the issue of equitable exceptions to Rule 4007 was not before it.

> This case involves no issue of equitable tolling or any other equity-based exception. . . . . Whether the Rules, despite their strict limitations, could be softened on equitable grounds is therefore a question that we do not reach. *Id*. at 457.

[19]Plaintiffs' Memorandum in Response to Defendants' Reply to Plaintiffs' Opposition to Defendants' Cross-Motion for Summary Judgment, Affidavit of plaintiffs' attorney Irve J. Goldman dated August 17, 2007, Exh. A.

when it was raised.  *Id*. at 18-19.  The defendants now appear to suggest that the court should modify that ruling so that it also sanctions that defense.  That result is not warranted.  The question is not whether the defendants have a right to amend their answer to raise an Rule 4007 affirmative defense but whether, once that affirmative defense is pleaded,  there are genuine issues of material fact that would challenge that defense.  The record clearly supports the conclusion that there are.  But that alone will not support the application of the waiver doctrine in the absence of proof that the delay unfairly prejudiced the plaintiffs.  *Rose v. Amsouth Bank of Florida*, 391 F.3d 63, 65 (2d Cir. 2004) (recognizing that waiver of an affirmative defense is not proper where the unpleaded affirmative defense is "raised at the first pragmatically possible time and applying it would not unfairly prejudice the opposing party.").

Here, the record supports the plaintiffs' claim that they were prejudiced in that the delay caused them to incur hundreds of thousands of dollars in unnecessary legal fees and expenses in the California Action. [20]  Accordingly, at the very least, the plaintiffs' objection raised a genuine issue of material fact as to whether the defendants waived their Rule 4007 affirmative defense.

### Plaintiffs' Motion for Summary Judgment

As noted, on March 21, 2007, the plaintiffs filed this motion for summary judgment, seeking a determination that the subject debts are entitled to preclusive effect under the doctrine of collateral estoppel.  Collateral estoppel "prevents parties or their privies from relitigating an issue of fact or law that was fully and fairly litigated in a prior proceeding." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 288 (2d Cir. 2002).

Parties may invoke collateral estoppel in nondischargeability proceedings "to preclude relitigation of the elements necessary to meet a § 523(a) exception." *James Jay Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006).  Code § 523 provides in relevant

---

[20]Plaintiffs' Memorandum in Opposition to Defendants' Cross-Motion for Summary Judgment, Affidavit of plaintiffs' attorney Neil Papiano dated April 25, 2007 at 3.  Neil Papiano served as the plaintiffs' attorney in the California Action.

14

part:

> (a) A discharge under section  . . . . 1141 . . . . does not discharge an individual debtor from any debt–
>> (2) for money . . . to the extent obtained, by
>>> (A) . . . . actual fraud . . . .
>
> 11 U.S.C. § 523(a)(2)(A).

A federal court considering the applicability of collateral estoppel to a prior federal court judgment should utilize the jurisprudence of the circuit in which the court is located. *See*, *James Jay Ball*, 451 F.3d at 69 (applying the second circuit law of collateral estoppel to a judgment for sanctions entered by the United States District Court for the Western District of Louisiana); *Stichting v. Schreiber*, ("*Stichting I*"), 327 F.3d 173, 180, n. 2 (2d Cir. 2003); *Purdy v. Zeldes*, 337 F.3d 253, 258, n. 5 (2d Cir. 2003); *Marvel Characters, supra*, 310 F.3d at 286. [21] In this circuit, a prior federal judgment will be entitled to preclusive effect in pending litigation where:

> (1) the identical issue was raised in a previous proceeding;
> (2) the issue was actually litigated and decided in the previous proceeding;
> (3) the party had a full and fair opportunity to litigate the issue; and
> (4) the resolution of the issue was necessary to support a valid and final judgment on the merits.
>
> *James Jay Ball*, *supra*, 451 F.3d at 69.

---

[21]The defendants, relying on 4 *Collier on Bankruptcy*, ¶ 523.06 (15th ed. rev. 1998), argue that this court must apply California's state law of collateral estoppel. However, the cases cited in *Collier* stand for the proposition that a federal court, considering the applicability collateral estoppel to a prior *state court judgment*, will apply the collateral estoppel law of that state.  Since the prior judgments in the California Action were entered by a federal court, the reference to *Collier* is inapposite.

Moreover, the defendants admit that the California law of collateral estoppel does not differ from federal law in this circuit.  Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Summary Judgment, at 29, n. 9.  *See, Roussos v. Michaelides (In re Roussos)*, 251 B.R. 86, 92 (BAP 9th Cir. 2000)(discussing the requirements for collateral estoppel under California law in essentially the same terms as the Second Circuit's requirements for collateral estoppel in *James Jay Ball*, *supra*, 451 F.3d at 69).

It is undisputed that the July 3, 2002 judgments in the California Action that established the subject debts are final and that the defendants were parties to that proceeding. The court must therefore determine whether the issue raised in these proceedings is identical to the issue raised in the California Action. Under that analysis, the court will look to the substance of the issue not the form employed to express it. As this court has previously held:

> The application of collateral estoppel does not depend on a 'complete identity of issues.' *Greene v. United States*, 79 F.3d 1348, 1352 (2d Cir. 1996), *cert. denied*, 519 U.S. 1028, 117 S.Ct. 582, 136 L.Ed.2d 512 [(1996).] It is sufficient if the subject issue is 'in substance the same,' *Montana v. United States*, 440 U.S. 147, 155, 99 S.Ct. 970, 974, 59 L.Ed2d 210 [(1979)] . . . . or if it had been decided by implication in the prior court . . . .
>
> *Raytech Corporation v. Official Committee of Unsecured Creditors of Raytech Corporation*, (*In re Raytech Corporation*), 217 B.R. 679, 687 (Bankr. D.Conn. 1998)(citations and internal quotation marks omitted).

The First Count of the plaintiffs' First Amended Complaint asserts a claim for fraud under 11 U.S.C. § 523(a)(2)(A), described as fraudulent misrepresentation and concealment. Specifically, the plaintiffs allege in their First Amended Complaint the following. The defendants made false and fraudulent representations to the plaintiffs, and the defendants falsely and fraudulently concealed information from the plaintiffs. First Amended Complaint, ¶ ¶ 18-19. [22]   The defendants knew that their fraudulent

---

[22]Defendants' Cross Motion for Summary Judgment, Declaration of defendants' attorney James Graham dated March 21, 2007, Ex. 21. The First Amended Complaint states in relevant part:
> The [defendants] falsely and fraudulently represented to the [plaintiffs] that [defendants] . . . . were only taking 5% of the [plaintiffs'] gross income for riding [as professional jockeys] as compensation for their services with no additional compensation . . . .
> First Amended Complaint, Count I: Fraudulent Misrepresentation and Concealment, ¶ 18.

> The [defendants] falsely and fraudulently concealed from [the plaintiffs]: (a) that [the defendants] received commissions and kickbacks on many of [the] investments into which [the plaintiffs'] money was placed; and (b) that [the defendants] received management fees and other financial

16

representations and omissions were material and misleading, and they intended to defraud and deceive the plaintiffs. *Id.*, ¶ 20. The plaintiffs did not know and had no reason to know that the defendants made fraudulent representations and omissions. *Id.*, ¶ 21. The plaintiffs reasonably believed that all material information had been supplied to them and they were reasonable and justified in acting in accordance with those beliefs. *Id.*, ¶ 22. The plaintiffs justifiably relied on the defendants' false and fraudulent representations and that the defendants acted contrary to their representations. *Id.*, ¶¶ 23-24. The plaintiffs have been damaged as a direct and proximate result of the defendants' fraudulent representations and material omissions. *Id.*, ¶ 25.

Although the terms fraudulent misrepresentation and concealment do not appear in the text of § 523(a)(2)(A), it is clear from the foregoing allegations that the plaintiffs intended to use those words to raise a claim of actual fraud under that subsection. The Supreme Court has held that § 523(a)(2)(A)'s reference to "actual fraud" was intended to "incorporate the general common law of torts, the dominant consensus of common-law jurisdictions, rather than the law of any particular State." *Field v. Mans,* 516 U.S. 59, 71, n. 9 (1995). The Second Circuit has construed the meaning of actual fraud to include "a false representation, scienter, reliance, and harm." *Evans v. Ottimo*, 469 F.3d 278, 283 (2d Cir. 2006)(citing Restatement (Second) of Torts § 525). Thus, courts in this circuit have found that "actual fraud" by definition consists of "any deceit, artifice, trick or design involving direct and active operation of the mind, used to circumvent and cheat another – something said, done or omitted with the design or perpetrating what is known to be a cheat or deception." *See e.g.*, *In re Lyon*, 348 B.R. 9, 22 (Bankr. D.Conn. 2006).

The plaintiffs further allege that the fraud alleged in the First Count is identical to the issue of fraud litigated in the California Action.

---

benefit from the partnerships into which [the plaintiffs'] money and earnings were invested.
*Id.*, ¶ 19.

The elements of fraud . . . . as found by the jury in the California Action and incorporated in the State Law Judgment, are identical to or closely mirror the elements of false pretenses, false representation and/or actual fraud under 11 U. S. C §523(a)(2)(A) and were actually litigated in the California Action. . . . . [T]he [defendants] had a full and fair opportunity to litigate [the fraud] elements and the resolution of all issues raised or that could have been raised . . . .were satisfied [as] was necessary to support that part of the State Law Judgment respecting the claims of [fraud, i.e.,] intentional misrepresentation and intentional concealment.

First Amended Complaint, Count I: Fraudulent Misrepresentation and Concealment, ¶ 32.

A review of the record of the California Action supports that claim. The district court instructed the jury that in order to succeed on their claims of fraud the plaintiffs had to prove:

1. The defendants made a representation as to a past or existing material fact;

2. The representation was false;

3. The defendant knew the representation was false when made, or that the representation was made recklessly without knowing whether it was true or false or the representation was made without any reasonable ground for believing it to be true;

4. The defendant made the representation with an intent to defraud the plaintiff, that is, the defendant must have made the representation for the purpose of inducing the plaintiff to rely upon it and to act or refrain from acting in reliance;

5. The plaintiff was unaware of the falsity of the representation; he acted in reliance upon the truth of the representation and he was justified in relying upon the representation;

6. And finally, as a result of his reliance upon the truth of the representation, the plaintiff sustained some damage.

Jury Instructions (Bifurcated as to Liability and Damages) at 20-21.[23]

With regard to reliance the district court further instructed:

> A party claiming to be defrauded by false representation must not only have acted in reliance thereon but must have been justified in such reliance, that is, the situation must have been such as to make it reasonable for him, in light of the circumstances and his intelligence, experience and knowledge, to accept the representation without making an independent inquiry or investigation.
> *Id.* at 22.

The Supreme Court has noted that actual fraud under California law requires the "intermediate level of reliance, most commonly referred to as justifiable reliance." *Field*, *supra*, 516 U.S. at 73, n. 12(citing *Seeger v. Odell*, 115 P.2d 977, 980-81 (1941). The Ninth Circuit has recognized that actual fraud under California law applies the same standard of justifiable reliance as is applied under § 523(a)(2)(A). *Parks v. Kirsh*, (*In re Kirsh*), 973 F.2d 1454, 1459-60 (9th Cir. 1992). *See also*, *Younie v. Gonya*, (*In re Younie*), 211 B.R. 367, 373-74 (9th Cir. BAP 1997)(stating the same), *aff'd*, 163 F.3d 609 (9th Cir. 1998).

Based on the foregoing, the district court's instructions on fraud under California law and the plaintiffs' claim for fraud under § 523(a)(2)(A) here involve the identical issue of fraud. The court must therefore determine whether that issue was actually litigated and decided in the California Action.

As noted *supra* at 4, specific jury interrogatories were presented to the jury. The plaintiffs argue that those interrogatories clearly demonstrate that the fraud issue was actually litigated and decided in the California Action. The defendants, however, contend that nothing in the record of that action demonstrates any intent on the part of the defendants to defraud the plaintiffs or that the plaintiffs justifiably relied on any alleged misrepresentation in the California Action. That contention ignores what the jury specifically found by their answers to the court's interrogatories.

The jury specifically found that each defendant intentionally made a false

---

[23]Plaintiffs' Motion for Summary Judgment, Affidavit of plaintiffs' attorney Patrick McAdam dated March 16, 2007, Exh. D

representation that the plaintiffs "would pay no more than 5% of [their] gross earnings from riding [as professional jockeys] in return for the defendants['] services. . . ."   Special Verdicts dated July 30, 1992, Question 11. [24]   Compare First Amended Complaint ¶ 18, *supra* at 18.   The jury further found that each defendant either knew the representation was false when made or that the representation was made recklessly without knowing whether it was true or false or the representation was made without any reasonable ground for believing it to be true.   *Id*. at Question 12.   That  level of  recklessness is sufficient to establish the defendants' intent to deceive.   *Roberti I, supra,* 183 B. R. 1006.   Finally, the jury found that the defendants intended to induce the plaintiffs to rely on their false representations.   *Id*. at Question 13.

With regard to reliance, the jury found that the plaintiffs were unaware of the false representation at the time it was made, and they justifiably relied on the truth of the representation in deciding to employ the defendants and to invest their money in partnerships.   *Id*. at Question 14.   The jury then concluded that the plaintiffs "sustain[ed] some damage[s] as a legal result of . . . . intentional misrepresentation[s] made by the defendant[s]."   *Id*. at Question 15.   The verdicts on the liability phase were the predicate for the damages phase of the California Action which determined the amount of the subject debts.   See supra at 3.

It is clear therefore that the fraud issue underlying the plaintiffs' claim here was actually litigated and decided in the California Action, and resolution of that issue was necessary to support the district court's July 3, 2002 judgments.   The defendants' position appears to reflect a disagreement with the jury's factual findings, but that is irrelevant as the judgments in the California Action are final.   *Evans* v. Ottimo, *supra*, 469 F.3d at 282. ("Bankruptcy proceedings may not be used to re-litigate issues already resolved in a court of competent jurisdiction.").   Accordingly, the elements of collateral estoppel have been satisfied and the entry of summary judgment in favor of the plaintiffs is appropriate on their

---

[24]Plaintiffs' Motion for Summary Judgment, Affidavit of plaintiffs' attorney Patrick McAdam dated March 16, 2007, Exh. E.

claim for fraud.[25] [26]

## CONCLUSION

For the foregoing reasons, the defendants' cross motion for summary judgment is DENIED, the plaintiffs' motion for summary judgment is GRANTED, and IT IS SO ORDERED.

Dated at Bridgeport, Connecticut, this 8th day of April 2008.

Alan H. W. Shiff
**United States Bankruptcy Judge**

---

[25]The jury also found that the defendants committed actual fraud by intentionally concealing material facts from the plaintiffs.  Special Verdicts dated July 30, 1992, *supra* note 24, Questions 17-22.  As the court has determined that there is a sufficient basis for applying collateral estoppel to the fraud issue raised here, it is unnecessary to determine whether the jury's findings of actual fraud by intentional concealment would serve as a separate basis for applying collateral estoppel.

[26]Because it has determined that the subject debts are nondischargeable under 11 U.S.C. § 523(a)(2)(A) the court need not address the plaintiffs' claims that the subject debts are also nondischargeable under 11 U.S.C. § 523(a)(4) and (6).

**APPENDIX**

Summary of California Action following entry of Bankruptcy Court Order granting
Defendants' amended motion for abstention dated October 26, 1995

| <u>Order/Judgment</u> | <u>Date</u> |
|---|---|
| District Court denial of Defendants' Motion for Judgment Notwithstanding the Verdicts as to Robert and Vincent Andrews, and entry of Judgment Notwithstanding the Verdict as to VAMC | 6/28/1996 |
| District Court reversal of Judgment Notwithstanding the Verdict as to VAMC | 8/13/1997 |
| District Court entry of Judgments on Plaintiffs' RICO Claims | 1/9/1998 |
| *Pincay v. Andrews* ("*Pincay I*"), 238 F.3d 1106, 1110 (9th Cir. 2001)(vacating judgments on Plaintiffs' RICO claims). | 2/6/2001 |
| *Pincay v. Andrews*, 534 U.S. 885 (2001)(denying certiorari) | 10/1/2001 |
| District Court denial of Defendants' request for remittitur | 7/3/2002 |
| District Court entry of Judgments on Plaintiffs' Claims Under California Law | 7/3/2002 |
| District Court Order granting Defendants' Motion For Extension of Time to File an Appeal | 9/3/2002 |
| Pincay v. Andrews ("*Pincay II*"), 2005 WL 3782443 (9th Cir. 2005) (affirming the District Court's July 3, 2002 judgments). | 3/16/2005 |
| Ninth Circuit denial of Defendants' petition for rehearing en banc | 6/30/2005 |
| *Andrews v. Pincay*, 546 U.S. 1061 (2005)(denying certiorari) | 12/5/2005 |